May it please the Court, I am Stephen Berry representing the plaintiffs' appellants in this matter. I'm accompanied by Colleen Duffy-Smith, Morgan Duffy-Smith, and Hidago, who's on the brief as well. I'm appearing for plaintiffs' appellants Sarah Perez, Michelle Lackney, Rachel Stewart, and Rachel Hardwick. It's respectfully submitted that Judge Ware abused his discretion by making multiple errors due to his fundamental misunderstanding of the pleadings as to the separate claims alleged. You may be alleging, I don't know what you're inferring there, but we're well aware that this is the third time the case is before us, before the Ninth Circuit. When it got down — when it got back to the district court after the second Ninth Circuit decision, it was pretty clear how the case was framed at that time under the Fifth Amendment complaint. And if you read Judge Ware's ruling on the motion for class certification, the second one, it's pretty — he understood what the case was about as you framed it in the complaint and in your motion for class certification. But, you know, I wouldn't make such a broad sweep against Judge Ware. Well, if I was overbroad, I apologize. There are two claims here. There's, to be sure, one cartel, one conspiracy. They used this CAPA organization as alleged to form a parts cartel. Now, Judge Ware is correct. There was one alleged conspiracy. The cartel implemented through — Let's cut to the chase on this. Everybody understood, and I think no dispute about that, that by the Fifth Amendment complaint, you were alleging that there was this so-called cartel to agree on defective parts, and that one, that's the one that Judge Ware said, well, you don't have any evidence because you don't have an expert on defective parts. You file — you have a Sixth Amendment complaint that you file, which seems to me to say the same thing, except it for the first time has sort of a bare-naked allegation that there's a price-fixing conspiracy going on here. I don't know the nature of it, but put that aside for a second. Judge Ware says, wait a minute. This was about parts up until now, and now we have a price-fixing conspiracy. This is a new allegation. It's a new case. You don't get to do it in your seventh pleading. That's a fair — I mean, I think that's a fair summary of what he said. I think I would add one element to that as well. Not only did he say this is a price-fixing part. He had mentioned previously, why don't you term this in terms of it's just a price-fixing part, and you told him, or the plaintiffs seem to have told him, oh, we can't do it. It's critical that there be a quality of parts aspect to it. I think that's the point. Let me just clarify one thing. We understand that the Sixth Amendment complaint had never been filed. You wanted to file a Sixth Amendment complaint, and Judge Ware said no. Yeah. That was your proposed next complaint, and he said, I'm not going to let you file another one. The Sixth Amendment complaint, as we point out, citing family dollar in the Fourth Circuit, was an elaboration of the price-fixing cases that have been in this case from the beginning, and this Court reckoned. Tell me why. That's exactly what I'm having trouble with. Tell me where we recognized that there was an agreement to fix prices. For sure, I know you alleged that parts affect prices and that by agreeing to use crappy parts, you are affecting the ultimate price in the end. But tell me where before this you alleged a conspiracy to actually fix prices. If I may. The first panel in 2009, Judges McAllen and Akuta found the conspiracy, quote, was alleged to prevent higher quality parts coverage from reaching the market and artificially inflated premiums for lower quality coverage. I understand what we said. You filed pleadings here. I'm sorry that, you know, I'm interrupting you, but this is important to me. Tell me where in your pleadings before the proposed Sixth Amendment complaint there was a price-fixing conspiracy alleged. We alleged a Cartwright price-fixing conspiracy. I'll read you the excerpts of record. That would be helpful. Tell me in which pleading. All right. I'm going to give you both, if I may, Your Honor. Sure. Even the most the Fifth Amendment complaint, excerpt of record 210, per se violation of Cartwright Act raising prices above competitive levels. Would you either point us to paragraphs? I'm sorry. That is excerpt of record, paragraphs 93 to 94. 93 to 94. Okay. Hold on one second here. This is a very long complaint. Yes. You know, something called short and plain, you know, in Rule 8. I'm guilty there, Your Honor. Well, the proposed Sixth Amendment complaint was a bit shorter. It was easier to read. The proposed Sixth Amendment complaint. Okay. So conspiracy in violation of the California Cartwright Act, paragraphs what, 90? 3 to 94, per se violation. Okay. I'm at 93. And look at 94, too, as well. Defendant's conduct, per se, is an unreasonable restraint of trade in violation of the Cartwright Act because it restricts competition and decreases quality output of defendants' automobile insurance policies in California. And raises prices above competitive levels. Where does it say that? That's 93. 93 says the conspiracy had the effect of raising and maintaining premiums above the competitive levels that would have prevailed otherwise. But where is there a price fix in that case? May I finish the, since you asked for it? Please. The excerpt of record 126, the proposed Sixth Amendment complaint, same. Paragraphs 64 to 65. I'm asking before the Sixth. Because here's my question, just so that you're clear. I don't want to trip all over you here. Judge Ware said this is a new theory. It may or may not be sufficient. That's a separate question. This is a new theory, and I'm not going to let you change the theory of the case in the Sixth Amendment complaint. So there's two prongs for denying leave to amend. One could be futility. Let's assume that you perfectly allege price fixing in the Sixth Amendment complaint. My question is, where was it before? And you've pointed me to paragraphs 93 and 94 in the Fifth, and there's no price fixing language in those. So tell me where else it was. The Fifth Amendment complaint, paragraph 83, excerpt of record 208. Conduct is the effect of making members of the class pay above competitive premiums. Fifth Amendment complaint, excerpt of record 198, paragraph 53. Defendants have not passed on the savings to their customers, and their collusive conduct makes no sense if all they're doing is saving money for customers. Go ahead. Under Socony vacuum, and under what this panel found, and let me take those because this is important. This is the lead case on what constitutes price fixing. The Supreme Court said the — excuse me. Excuse me, Your Honor. Quote, the machinery employed by combination for price fixing is immaterial. A combination with the effect of raising, depressing, or fixing, pegging, or stabilizing price of a commodity in interstate or foreign commerce is illegal per se. Go ahead. And the point is this, that it's sufficient to show this effect on price that the cartel agreed not to pass on cheaper parts' savings. That's your theory up through the Fifth, and I understand that. And you can attack Judge Ware's summary judgment. That's a separate issue. I'm asking, in the Sixth, you seem to have a brand-new allegation of collusion to fix prices. If it's exactly the same allegation as you had before, then I'm not sure why you should be given leave to file it. If it's a new one, I'm trying to figure out where it was before. The answer to that question is, Judge Hurwitz, is that the judge made what we believe to be a post-hoc, ergo-proker, logical fallacy. Because parts, the defendants agreed to pass off deceptively inferior parts to generate parts' savings, and then also agreed not to pass on those savings to keep premiums high. The ergo-proker hope is it's — that doesn't mean the causative agent is the inferior of the quality of the parts. The quality of the parts, it means the causative agent is the failure to pass on the cheaper parts, as our econometricians have shown. And the effect on price. The effect on the price. That's right. And there's nothing in Soconia that says, oh, by the way, you also have to show that the product fixed or colluded is inferior. Well, then let me go back. Now, what you're telling me is that the Sixth Amendment complaint simply alleges the same price-fixing conspiracy that you've been alleging all along, correct? Yes or no? Yes. Okay. Stop for a second. I'll let you explain in a second. If it does, if it does, then why isn't the summary judgment with respect to the Fifth Amendment complaint when the judge says you don't have any evidence that the parts were inferior, why doesn't that cover the Sixth also? Well, there are two questions there. Answer either of them or both. First of all, the parts inferiority was a predominance showing under Rule 23, which didn't apply to individual claims. Well, but he granted summary judgment on your individual claim. I know, but he did it on that basis. He said you don't have predominant proof. He said you don't have commonality, which is different than predominance. But by definition, the individual claims are individual. They're not classified. No, but this whole – wait a minute. You have to step back, because this – he only got to the individual claims because he denied class certification. He denied class certification. Yes. And he denied class certification because he struck Mr. Woods' testimony, expert testimony. He said it's insufficient to show – for you to show the methodology for establishing categories of inferior parts. You didn't have anybody else. And he said what Mr. Woods has to offer just doesn't do it. And he struck his testimony, his affidavit, and then you had no evidence, as Judge Hurwitz just pointed out. After changing the standard, do you apply without any explanation from expertise to scientific proof? But your brief doesn't challenge that Daubert rule. We do – we do in a sense that if you find that the part fallacies on proof of damages is – doesn't require reversal on four different reasons, if you find that leave to amend the complaint was not – was an error, then you get – you can get Daubert. Step back. What Judge Ware says, this expert, I'm not going to allow his testimony, correct? After previously saying he wasn't going to allow it. I mean, we've all read the record. I know the good parts for you. I'm asking about the bad parts. Judge Ware says I'm not going to allow this expert to testify. And then after denying class certification, he gets to the individual claims and says in the absence of any testimony that would demonstrate classes of inferior parts, I don't think you've got a claim and grants summary judgment. We with each other so far? Yes. And you don't challenge in your brief – I don't see – maybe I've missed it. You don't say Judge Ware abused his discretion in excluding this witness's testimony. No, because we don't think you need to get to that issue because of the other error. Okay. But if I think you need to get to it. But it is briefed. It is briefed. Where? We do indicate in our reply and in our opening brief that he changed the standard without any explanation. And so that is fully briefed. He originally used a expertise because the gentleman worked for years, 30 years for the California Bureau of Automotive Repair and knew his parts. He said fine. We went to class – we never – sorry, go ahead. You know, I'm sorry, but, you know, I actually find – one of the problems I've had with this case is that the theory is not well laid out. You can – your briefing confuses exactly what you're trying to show. And in all credit to Judge Ware, when he was confronted with the motion for class certification, the quality parts issue was front and center. That was sort of the core of your claim. Now, I don't – I think there was embedded in the 50-minute complaint a price-fixing claim. I don't really have any problem with that. But Judge – when you moved for class certification, the whole issue of parts quality was front and center. And so you even defined the class. In your motion for class certification, you even defined the class to include parts – a parts quality component. And so Judge Ware said, okay, where's the – how are you going to prove this? How are you going to show commonality among all these class members within – vis-à-vis any given insurance company? And he looked at that. He looked at your evidence. All you had was Mr. Wood. And Wood – all the thing Wood could say was there's a way it can be done. He couldn't do it. And so when you couldn't – when you didn't have anything more than that, he just said Mr. Wood's declaration doesn't do it and it's out. Your Honor, you don't get there if you realize that from the day one in this case, including when this panel would review it, we had fraud, unfair competition law claims, which is the injunctive B-2 claims, and we also had B-3 per se price fixing. And I've given you some of this. May I finish? I need to get this point. Get it out. Judge Ware conflated the legal necessities of proof between them. He treated it as if it was one mash-up of injunctive and damage claims. Because we did allege parts inferiority on the injunctive side of the case to alleviate the safety concerns for millions of California drivers, that he said, well, it's the ergo hoc proctor hoc. That's not the causative agent. The quality of the parts is not the causative agent of the damage. So your argument now today is that the parts quality component only related to the injunctive claim? That's our argument. It's all the way through the briefs. Is that what your argument is today? That is that the parts quality component that was used in the class definition and alleged in the complaint in great detail only relates to the injunctive relief? That's it? May I respond? Yes. What occurred was the parts quality was a mechanism. It did relate to the price fixing and the overcharging in the sense that it was the only thing that was used in the case.  It did not relate to the overcharging. It did not relate to the overcharging. It did not relate to the savings from the cheaper parts. So it is related. So let's assume that no, no, no, no. I get to interrupt. I get to interrupt now. May I ask a question? Because I don't understand your argument now. If the parts were good, let's assume the parts were good, perfectly good parts. You got any claim at all? Yes. This is what we told the Court. When did you tell the Court that? In the class hearing. This is quote. This is what we told the Court. Even if it were shown hypothetically that every single imitation and salvage part were exactly as good as the equivalent new original equipment manufactured part made or by the automobile manufacturer, the fact that defendants conspired not to pass on the savings would be illegal, and the fact that they did not pass on those savings would still be class-wide injury. This allegation concerning the conspiracy quality, that means parts and inferiority of parts, goes to the mechanism where they generated those savings. It also goes to the injunctive claim as to what we're trying to stop with these unsafe parts, the undercarriages of the cars that will cause you to drive off the road. Yeah, but you don't have any evidence that they're unsafe. So let's just move on now. They're okay. I guess I'm just going to maybe restate some of the question here that's going to the same issues that I think my colleagues have been asking about. But let me ask it to you this way. Is the certifiability of the proposed injunctive class contingent on the certification of the damages class, or can they proceed independently? They can proceed independently. All right. Because the standards are different. There's no predominance requirement, Your Honor. So I think I understand your argument that I think you claim that Judge Ware conflated the commonality, the 23A with the 23B. Two. Two. Well, A. Or three. Yeah. Because you have to show 23A and then you have to show at least one 23B. Is that correct? Right. Okay. All right. And what do you claim you showed in terms of 23B? That there was conduct that had to be found. Predominance? Did you think you showed predominance? We don't have to. What do you think you showed under 23B? Some common issues, as we allege explicitly in each of the four. Well, you showed commonality, but what's your 23B? Well, the commonality for B2 is defined in 23A. It's some common issues. Okay. And the common issues across the class, as alleged, that the defendants are deceptively palming off, passing off inferior, unsafe parts, and the class needs relief. We need to stop this. But if you have problems with your methodology, I guess even if we accept your contention that you paid inflated premiums does not, I guess, depend on your ability to prove non-OEM parts are inferior to OEM parts. Do you have a methodology? I guess I'm just trying to figure out how your methodology for proving price injury survives the rigorous analysis required under Ellis. And did Dr. Knoll, his regression model, it seems like there were problems with that and it failed to prove the pass-through failure, the pass-through. Well, Judge Ware never addressed that, but this is a very high level. But let me ask you. I know because you don't think Judge Ware addressed that. I want to know your response as to how your claim survives in light of that. Dr. Roger Knoll, Professor Emeritus of Stanford, put in four expert reports. He analyzed actual merits data, sampling of merits data from each insurance defendant, all four of them. He showed with sophisticated regression analysis, it's never been challenged and it's been found reliable by Judge Ware, a methodology that Judge Ware, even though it only focused on part savings and not quality, Judge Ware found was reliable. And he showed with a massive, and I might add expensive, econometric record, that there was no pass-on, that the regression analysis was they are retaining the cartels, retaining the parts, the parts savings, and they are not passing them on. That is. That would be okay, wouldn't it, in the absence of an agreement? Yes. It has to be colluded. Because I'm not required to pass that. That's what Ciccone Vacuum says. Okay. So where is the evidence of collusion? The evidence of collusion. I thought your evidence of collusion followed from the prices. It's the part of the complaint that Judge Pius is finding too prolix and lengthy. It's the CAPA. It's they put a hub, this CAPA sham certification thing, to say, hey, these parts are great. But here's my difficulty. And that was the mechanism of the conspiracy. Are we running in a circle here? You can put together a standards organization. There's no per se violation with that, right? Oh, yes. Okay. So your argument was this is a sham standards organization because it's upholding defective parts. They're not really there to do standards. They're there to enforce a price-fixing conspiracy. No. They're there to provide cover from the competition of the cartel so they can't blow the whistle on the cartel. Okay. I'll call them the cartel because you like to call them the cartel. But tell me what evidence there is other than the formation of the standards organization and your allegation that they were approving defective parts that shows that there was a cartel to fix prices. Okay. In other words, it seemed to me to all follow in your theory of the complaint from the defective parts. If the standards organization got together and approved good parts, you'd have to have something else to show a conspiracy. Tell me what else you got. We got, Your Honor, and I allude to opening brief at 40 to 41. We note, even though there's been no merits discovery, we've been hung up on procedure for the last several years. We do have seen documents from prior litigation. The supposed competitors as to price freely discuss at e-mail exchange in their joint part savings the status of their policy substituting parts that generate these savings as well as the $240 million Appellee State Farm has saved from the use of these parts. Well, but I read that, and that demonstrates something pretty obvious, which is that if you use cheaper parts, you'll save money. Tell me, but I'm still looking for some evidence of a collusion. May I beg to differ, Your Honor? You don't, you cannot extend competitively sensitive cost information among competitors without, competitors truly do not do that. They don't sit down and say, what's your cost, Joe? What's your cost? Let's see if we can both together collusively get them down. That's not what competition's all about. Then there's also the cap. Is there any evidence in this case at the end? No. I have a question. It's the way this works. I'm sorry. We're both very energized. Yeah, but they gave me this, so I get to ask you the questions. I apologize. At the end of the day, is there any evidence of collusion in ultimate price? In other words, is there competition in ultimate price among these four members of the cartel? This is not a smoke-filled room direct, so Coney doesn't require you to be in a smoke-filled room and say,  Roger Knoll has shown, and just for using sample data, hundreds of millions of dollars of costs that have not been passed on, and it costs from cheaper parts, not inferior quality parts. He's all over the record. The answer to my question, no. Is there any evidence? No, no. There's no direct pricing. So there is competition in the end direct pricing. At the end pricing, there is competition. In other words, these four people aren't charging the same thing for the same product. Because they've colluded upstream on not to pass on costs. So there's no, by definition, that's not a competitive price downstream, Your Honor. You don't need it. But you're not answering my question. And it may not be important in the case, but I still want to understand it. If I were to go out and look at these four members of the cartel for identical policies, they would not be charging the same thing for each policy, would they? If I went to State Farm, it might be charging more or less than another member of the cartel. That's right, Your Honor. We don't allege that they got into a smoke-filled room and they agree like for lead pipe or something that that's the price they're going to charge. Okay. But to go back to this, it's fundamental to this case that I respectfully submit to the panel that you realize that, look, quite frankly, under Judge Ware's approach, by conflating the injunctive parts quality requirement substantive for price-fixing injunctive relief with the pass-on. I've just been reading. I've just taken another look at your motion for class certification. Basically, your motion is a motion for class certification under B, it's a B-3 class. We also assert B-2, Your Honor, and it's in the complaint. But in your motion for class certification, which is what Judge Ware was ruling  under? Well, he ruled that we didn't certify the B-2 class because he claimed we were he felt it was in the case. Your argument was really about B-3. You wanted a damages class. We wanted both. The safety issues are paramount in this case. Well, I don't want to argue with you. You can just take a look at your own motion. Well, Your Honor, respect the pleading. And in any event, Judge Ware ruled on commonality, which also, when you have a B-2 and a B-3 class, you need to establish the first four elements of Rule 23A for both a B-2 and a B-3. He ruled on commonality. No. He said on predominance. Because that one sentence supposedly is class opinion at the end of the Dartmouth is because you don't have predominance proof of parts quality, bye-bye injunctive class, bye-bye damaged class. That's a clear error. Which is a clear error as to both or only as to one? Well, we believe the parts fallacy is a clear error as to the, that is, the ergo proctor hope fallacy, the way he read the complaint. Well, with respect to the injunctive class, if there's no evidence that the parts are no good, does the injunctive class fail? No. He says there's no predominance, common predominance evidence, class requirement. He's not saying that we haven't alleged and can show that the parts are no good. Well, he said that with respect to his summary judgment motion, didn't he? No. He said because I found that you have no method of proof under my predominance that I'm going to grant summary judgment, which is a little bit surreal because these are now individual claims. Okay. Thank you. We let you go way over your time. I appreciate that we were talking over each other, and I thank you for your help. Judge Hurwitz, it's a pleasure to be before you. May it please the court, my name is Raul Kennedy, and I'm appearing this morning on behalf of all five defendants in the case. It's our position that if this is a case about inferior parts, there's no evidence as a matter of law to support it. If it's not a case about inferior parts, then the parts are just like Midas  and they don't have to be made by somebody other than Detroit. Two quick questions, Mr. Kennedy. Sure. One, could HitGay have alleged a price-fixing claim here without any reference to parts quality? Yes. So isn't a price-fixing claim embedded in their Fifth Amendment complaint? Embedded may be the right word, that if you do enough digging, maybe you can find it there. That certainly was not disclosed to us or to Judge Ware. Remember, Judge Ware denied the second class certification motion saying you can't prove parts inferiority. Well, let's assume you didn't come back and say, Judge, you forgot half our case. We have this other theory that's buried in there. Not a word about that. Well, if you read the motion for class certification that they presented to Judge Ware, the second one, I mean, I think you're probably correct that the whole focus was on parts quality. Correct. And remember, Judge Ware spent a half hour trying to redefine the class to not include inferior parts, and the plaintiffs told him, no, you can't do that, because inferiority is what makes the conspiracy work. Can you speak into the microphone? Mr. Kennedy, could you put it up? Yeah. Let's assume for a second. Put aside the pleadings for a moment, because we can go back to the pleadings. Let's see. Do you agree with me that if the pleadings had alleged you put together this standards group, it picked out perfectly good parts, but then you all got together and agreed that because those good parts were less costly than the manufacturer's replacement parts, you would all agree together not to pass on savings, that that would state an antitrust claim? Yes, that would. Okay. And so my question is really the same one that Judge Pius just asked you. Isn't that — it's not the world's greatest complaint. Sometimes length is worse than brevity. But isn't that implicit in the Fifth Amendment complaint? I don't think it's implicit until Mr. Barry came around and told us that's the way it should be read. But — So now my next question is, assume that it changed the theory. Assume that it — this is a brand-new theory that wasn't expressed before. What's the prejudice — you've now been — you're in class discovery, you're four years into this case, but you know all along his allegation is that somehow you've been in cahoots with each other to do something bad. Why does this change the focus of the case enough to justify the judge saying, I'm not going to allow the Sixth Amendment complaint? Even if we assume that there is no prejudice, as I think your question implies — That's my question. Is there prejudice? Yes, I think there would be. Tell me why. In that we would now have a case that has a class dating back to 2002. It would be a 14-year-old class based on a new theory, and we're now going to try doing discovery, finding pre-computerized records, et cetera. Having said that, that's not our principal argument. We think this Court would be fully justified in finding the judge where did not abuse his discretion, given the fact we're up to a Sixth Amendment complaint. But even if you disagree with me on that, we get to the whole question of futility, because once you take inferior out of the case, you're then talking about perfectly good parts, and it would be like saying Scheer is another battery. But that's what I just asked you. That's why I'm having difficulty. I said, let's assume they got together and agreed in the Standards Bureau to perfectly good parts, but then they also agreed not to pass on the savings from those perfectly good parts to their customers. And I think you said to me that would state an antitrust claim. That's just not what this alleges. I'm sorry. That was when I said I misspoke. What I said was that would be, if you assume all of those facts, yes, that would be an antitrust violation. However, under musical instruments and Twombly, you can't say, assuming X, Y, and Z. So then you're concerned with the Sixth Amendment complaint, putting aside prejudice, which is that it wasn't specific enough. No. It's that taking the totality of what's alleged there viewed in context, that complaint would have to be dismissed under Rule 12b-6. As not plausible? It's not plausible. Let's talk about why, Your Honor. First, as you elicited, it's undisputed in this case the defendants compete vigorously as to price. And that's brought out particularly in the CRIPE declaration, which is at ER-578, and particularly at page 582, vigorous price competition. Secondly, on pages 14 and 15 of our brief, we point out we have four insurer defendants who have totally dissimilar policies as to non-OEM parts. And in particular, Liberty Mutual's policy is you can choose either an OEM or a non-OEM. If you choose the non-OEM, Liberty Mutual gives you the savings in the form of a reduced deductible. So we now have a case where people compete vigorously as to price, totally different premium structure, totally different practices as to use of non-OEM parts, including one conspirator who does exactly what the conspiracy says you're not supposed to do, pass on savings. And then you're asked to believe, in that world, these people get together and say, time out. Let's not compete on whether we pass along the savings from our totally dissimilar practices. But that's not the basis on which Judge Ware granted summary judgment. Correct. But because they gave you one of these, you get to affirm on any ground, even if he didn't. Well, except you're asking us to find that the complaint, filing the new complaint, would be futile because of evidence in the record that suggests that you really weren't conspiring. And that's not the basis on which Judge Ware turned it down, is it? He didn't say, well, you could file this complaint and it could even be specific, but the evidence in the record is so much the contrary that you'd lose in the end. He said you would likely be futile. We'd likely be subject to a motion to dismiss. And what I think he should have said, to be strictly under the standard, would be it would be subject to a motion to dismiss. But regardless of what he did, there's a de novo review standard. As we know, even though 15a is normally abuse of discretion, where futility is concerned, it's a de novo standard. So it's for this Court. And you certainly are as well equipped as Judge Coe, I guess, to whom this case would go if it were sent back to decide whether that Sixth Amendment complaint states a claim under Twombly and under this Court's standard in musical instruments. What I'm having difficulty with in your argument, and maybe we're just missing each other, is I might agree that it's not specific enough to state a claim under Twombly. But if it were more specific, what you're telling me is that you'd win on summary judgment. And I'm not sure that's the futility standard. I think the futility standard is can you allege a claim, not can you prove it. Correct. And as we know, under Twombly, you've got to have plus factors to nudge conduct from possibility to plausibility. So here we have carriers selling non-inferior parts, competing vigorously on competition, totally dissimilar parts, non-OEM parts policies, using the musical instruments test. Where are the plus factors? Where is there anything to indicate that any of this conduct isn't exactly what people would do in their own self-interest or even as part of conscious parallelism? There is zero in the Sixth Amendment complaint, once you take inferior out, that identifies any. I feel a question coming on. I saw my colleague about this. That's why I was looking over there. Let me, I think, ask you sort of a similar question that I asked your counsel over here, your colleague here. Does the existence of, you know, a methodology, because a lot of focus on the methodology, for demonstrating injury go to Rule 23A, commonality, or Rule 23B, predominance? I think it goes to both in terms if you're alleging inferior parts, you'd have to establish it either way. So you think it goes to both? Because we also, we have the damages class, and then we also have the injunction class, correct? Correct, Your Honor. All right. So I guess I'm just trying to figure out why are the plaintiffs' ability to certify their injunctive class contingent on their producing methodology at all? Because, I'm sorry, Your Honor, unless they can identify the inferior parts, how is the court to decide what should be enjoined? The court certainly wouldn't be enjoining the sale of non-defective parts. So to know the scope of the injunction, you'd have to know what's the scope of the inferiority. But I guess, why don't plaintiffs' allegations, and I know you keep focusing and you kept focusing, Judge Ware, on the parts for reasons that I understand. I mean, the plaintiffs also did, too. But I'm trying to understand, why don't plaintiffs' allegations that the defendants participated in a single conspiracy or engaged in an anti-competitive conduct sufficient to demonstrate commonality? Because, as this Court said in Musical Instruments, in judging whether a complaint has stated a Section 1 claim, there need to be evidentiary facts, not just conclusions, evidentiary facts. But it's a very low bar to meet the commonality, and it just seems like these allegations may raise at least one question on the punitive class. If I might, Your Honor, you can read the Sixth Amendment complaint all day, and there is nothing there that is a factual, as opposed to a conclusory, allegation of any conduct that isn't the sort of thing a business would do independently or would do possibly as a result of conscious parallelism without an agreement. Remember, in Musical Instruments, we at least had people all agreeing simultaneously to have the same minimum resale prices. We don't even have anything that smacks of that here. And I guess the other thing, I know you claim that there's nothing that smacks of that, but, I mean, there's this whole tension of rigorous analysis that takes place, but also not going into evaluating the merits. And did Judge Ware evaluate the merits here in doing his due diligence on the rigorous analysis that's required at the certification? I think we've got two questions going there, one with regard to class certification. Yes, I do think he took a look or a peek at the merits, as he's authorized to do, to do the rigorous analysis. Then there's a separate question of whether the Sixth Amendment complaint stated a claim that could possibly survive a 12b-6 motion, and there he concluded that it wouldn't, and I submit it. He said likely. He said likely. He didn't really actually make a definitive declaration. That's fair, and if there were two words I'd like to explain from the record, it is too likely. That was probably error, I submit. But don't we have to conclude that it's not just likely, but that it wouldn't survive? Right, and you get a de novo review standard to do that right here, and we urge you to do that. Mr. Kennedy, can we go back to the class certification motion and the argument, as you recall, Judge Ware struck Mr. Wood's declaration. Correct. Do you read the brief as challenging that determination, the appellant's brief as challenging that ruling? I'm not sure. I see them throwing rocks at Judge Ware for doing a supposed switch. I don't see anywhere where they say, and here's how Mr. Wood's testimony, if it had been accepted, would have met the necessary standards. So ---- Well, let me ask you, was it necessary for Judge Ware to strike Mr. Wood's declaration in order to deny class certification on the grounds of failure to show commonality? It certainly wasn't necessary. Because there was no evidence. There was no real evidence of how they were going to establish parts, the inferiority of the parts or categories of parts. Correct. I don't think there was any need for him to grant the Daubert motion. I think under the rigorous analysis, he had to look at whether we ---- whether Wood's testimony was adequate. He also could have rejected on the basis of finding that Knoll's methodology was inadequate, as could this Court. And if I may ---- What did you understand the motion for class certification to be seeking to certify? Is it a B-3 or B-2 or both? I thought it was a B-3. That's what I thought. But reading the briefs, I'm told apparently, like so many things in this case, I missed it. I just didn't read it creatively. I thought we were there on a B-3 class, though, Your Honor. Okay. Again, I think this case really comes down to futility. I'm not trying to limit what this Court's role will be. We'd be delighted to have you affirm on a failure-to-abuse discretion standard, and as I said, I think you'd be well within your powers to do that. Well, but if you would, tell me what prejudice ---- tell me the prejudice you would have suffered. I understand it's well on into the case. Okay. But surely the case all along is about some illegal agreement, correct? Yes. So that in the end of the day, they've got to show something more than parallel behavior, more than what people would do in the ordinary course of business. You knew that all along. Why would the case so much change if they were now saying it's just a pure vanilla conspiracy, we don't care whether the parts were good or bad? Because up until now, we thought it was all about inferior parts. Now we're told, no, it's about the failure to pass on savings. Well, to be fair, that's been it all along. They've always said the failure to pass on savings. Savings from the sale of non-inferior parts. Well, what difference does it make economically if the agreement is not to pass on savings from the sale of parts? Why is it such a big change in the theory of the case if the parts turn out to be okay rather than defective? Because now a whole lot of e-mails with an ambiguous statement from 2003 may support the new theory where, as they said, nothing about inferiority and we're going to be chasing after retired people and people in retirement homes and dead people trying to reconstruct a case that goes back 15 years. That's why we have statutes of limitations. Well, you know, a lot of the delay wasn't their fault. That's correct. And that's why I'm not beating the drum over prejudice. He got two reversals out of the Ninth Circuit. We come with lowered expectations, Your Honor, and that's why I'm not looking to try to get it on some narrow ground now. That's why I keep talking about futility, that it would be futile to send this Sixth Amendment complaint back. And the three of you are certainly in as good or a better position than a judge in the Northern District to decide whether under Twombly and musical instruments there is so much more in musical instruments. They at least had six nominated plus factors. The only plus factor they've suggested here is Dr. Knoll's regression analysis, which gets severely criticized by Mr. Cripe in his report. And at the end of the day, even if there was uniform non-passing on of savings, if the parts aren't inferior without more, there's nothing there to indicate that wasn't legitimate individual conduct. In other words, your argument is that one reason people might put together a standards bureau is to get cheaper parts approved so they can make more money in selling their policies to consumers, right? That's exactly why they did it, Your Honor. And it was done for partially selfish and partially pro-competitive reasons, because until we came along, Detroit had a monopoly. And as explained actually in one of Mr. Berry's exhibits, the Jack Gillis letter, as a result of CAPA, Detroit has been forced to lower their prices and actually start competing with somebody for a change. That also holds down insurance costs, to be sure. But there are totally not only legitimate. I'm accepting the regression analysis is true for purposes of my question. So it means that you couldn't have sold policies cheaper, but you didn't. And that's not behavior which by itself would make it more plausible than not that you had an agreement. Precisely. Particularly in an interdependent regulated industry where everybody has a lot of knowledge about what everybody else is doing to start with. And as I say, I think if anybody puts the Sixth Amendment complaint next to musical instruments, we don't have the nudge here to get across the line. Okay. Thank you, Mr. Kennedy. Thank you very much, Your Honor. I'll let you have a minute for rebuttal, because I want to ask you a question. May I get in my rebuttal before you ask me the question? Well, I don't know. Depends how you answer my question. Go ahead. Sorry. What are the plus factors that are alleged in the Sixth Amendment complaint that we should pay particular attention to when we go back and take another look at this? All right? Paragraphs 20 to 25 of the CAPPA. CAPPA was the ‑‑ that's more than a plus factor. And I read into the record previously some of that CAPPA document about how they were facilitating the retention increasing of profits of the defendants and the non‑pass on. So we have 20, and we also, in the brief, I cite those two record evidence and I reproduce them in the appendices. There's plenty of plus factors here. Well, for purposes of ruling on a ‑‑ so what Judge Ware said was in denying the motion to file a Sixth Amendment complaint, he gave several reasons, one of which was it would be futile, because the allegations in the complaint are insufficient to state a price fixing claim under the Cartwright Act. Right? So we look at the allegations in the complaint. I'm not going to go back and look at the record evidence to judge this complaint. He said the record on the Sixth Amendment complaint, the allegations were devoid of any plausible conspiracy, and I'm saying that's error. It's there. It's there. If it would help the Court ‑‑ Again, I'm looking at your paragraph 26. Your expert economist said could they get together to form ‑‑ yeah, they could. Could they do it without ‑‑ yeah, they could have gotten together without having a conspiracy to fix price. So your expert says it's plausible that a standards board could get together without a conspiracy to fix price. So take out the inferior parts again. Tell me where in the Sixth Amendment complaint there's something that nudges that over from what your expert says is plausible to the other side. He says they could. They could get together to fix prices, but he doesn't say it's plausible just because they have a standards organization. I'm not ‑‑ I'm not sure what you're referring to in Dr. Knoll's testimony. He was deposed for 7 hours. But ‑‑ It's in the ‑‑ Your complaint? Paragraph 26. He asks us to look at paragraph 26. Judge Hurwitz is looking at paragraph 26. Oh, I'm sorry. I'm sorry. Paragraph 26 right in front of me. And he says could they form a joint venture that could be used as a device for colluding with respect to price? Of course they could, without the product of the venture being inferior. But he just says of course they could. Now, the question is what ‑‑ that doesn't tip it over into plausible for me. It just says it's possible. So tell me what tips it over into plausible. If I didn't get Dr. Knoll's testimony. The fact that there's record evidence here that CAPA was intending to facilitate the nonpass on and keep premiums above prices. But he says he's ‑‑ basically the point he's making there, I believe, he says he's making the point is that you don't have to show that the parts are inferior, merely the parts savings were collusively not passed on. Yeah. No, he says of course you can have that. I don't doubt that you can. The question is what makes it plausible that you have it here? Well, that we have the allegations as to CAPA is they're palming off deceptive parts to keep competition to ‑‑ with the certification ‑‑ Your Honor, sorry. Take deceptive out of it. See, this is the problem I'm having. Okay. Take bad parts, defective out of it. Take defective out of it and tell me what makes it plausible that they have a conspiracy to approve good parts and ‑‑ but not pass on the savings. Well, Your Honor, CAPA was enabled to do the deception, so it's hard for me to talk hypothetically about that, but I'm not alleging. I'm not alleging that they were independent, that the CAPA was a mechanism to generate the savings and to provide air cover from competitors who would blow the whistle on the faulty parts that make you drive off the interstate. So, I mean, this is interrelated. There's one cartel, one conclusion, but they needed to do both. They needed to keep the competitors at bay so that Chubb or some other company didn't market against them or it would be very expensive for them to market against them because they could point to CAPA. So I'm sorry, but your hypothetical is just not our case. I mean, the inferior parts business is the mechanism to generate the savings, which they agreed not to pass on. So do you agree with me that your case depends on us showing that the parts were inferior? In the Sixth Amendment complaint. In the Sixth Amendment complaint. No, it doesn't. Your Honor, let me read you the first paragraph. Okay. So that's the question I'm still asking you. If I may. Let's assume the parts are not defective. Tell me what in the Sixth Amendment complaint makes it plausible that they had a conspiracy to withhold the savings from nondefective parts. Defendant automobile insurance companies have unlawfully fixed prices by conspiring not to compete to pass on hundreds of millions of dollars they have saved using cheaper imitation and salvage parts. Cheaper. I didn't say they're cheaper because they're salvage imitation. That's not plausible. That's a conclusory allegation. Tell me what makes it plausible that they formed this group in order to collude not to pass on the savings from nondefective parts. Okay. So that's 20 through 25 of the Sixth Amendment complaint, which need to be assumed as true for this purpose. To help implement and conceal the conspiracies, the conspirators have created, financed, directed the Certified Auto Parts Association. This is 21. This is a vehicle for the insurance companies to discuss and coordinate their conspiracy. Two, pitching conspirators for more money, CIP Director Jack Gillis stressed positive and dramatic impact on their bottom line, pointing out that insurers are only the party in the equation that gains the only party in the equation that gains financially, not the insured, and claiming that the use of imitation parts saves the insurance industry an estimated $400 million in direct savings each year. Emphasis added. Twenty-three, CAPA is not the only organization defendants have used to coordinate their concealed lack of competition to pass on parts savings for the use of cheaper parts. That goes on to mention the Insurance Institute for Highway Safety. Paragraph 24. Because they benefit from the conspiracy not to pass on savings for the use of cheaper imitation salvage parts, defendants have required automobile repair shops to use a variety of cheaper parts regardless of quality. These include CAPA-certified non-OEM imitation parts, et cetera. So if that isn't a plus factor, I don't know what is. This is direct evidence that they are conspiring to save money and collude as to that and not pass it on. Okay. Thank you. We appreciate your arguments. That concludes our session for the day. Thank you. Thank you, Your Honor.
judges: Paez, Murguia, Hurwitz